IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORVIN LEE and
BERNITA GARCIA,

        Plaintiffs,

v.                                                        Civil No. 96-1525 WWD/LCS

GALLUP AUTO SALES, INC. d/b/a
FRIENDLY MOTORS; MONTANA MINING,
INC.; and JERRY EGELAND,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiffs' Motion for Partial Summary Judgment, filed September 15, 1998 [docket # 44-1]. The basis for the underlying suit is the sale of a 1985 Chevrolet Blazer which developed serious mechanical problems soon after purchase in December 1995 and ultimately stopped running. Plaintiffs contend that Gallup Auto Sales, Inc., d/b/a Friendly Motors ("Gallup Auto Sales") gave them a false odometer disclosure at the time of sale. Montana Mining, Inc. ("Montana Mining") was assigned the retail installment contract by Gallup Auto Sales on the day of sale. The terms of the assignment make Montana Mining liable for Gallup Auto Sales' alleged violations of the law.[1] Defendant Jerry Egeland is the President, Treasurer, director and shareholder of Gallup Auto Sales, Inc. and Montana Mining Finance, Inc.

Plaintiffs ("the Lees") seek a ruling as a matter of law that Gallup Auto Sales and Montana

---

[1] The retail installment contract executed between the Lees and Gallup Auto Sales was assigned to Montana Mining and reads in part: "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services." Pltffs' Mem.Brf., Ex. E.

Mining, Inc. violated the Federal Odometer Act ( 49 U.S.C. §§ 32701-32711) or the New Mexico Unfair Trade Practices Act (N.M.S.A. 1978 § 57-12-3 *et seq.*) ("UPA"). They also bring claims of common law fraud and negligent misrepresentation against the Defendants which are not addressed here.

## DISCUSSION

*Summary Judgment Standard*

Summary judgment issues only where there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Moya v. United States, 35 F.3d 501, 503 (10th Cir. 1994). In making a determination on a motion for summary judgment, a court does not weigh the evidence, but rather asks whether a reasonable jury could return a verdict for the nonmoving party on the undisputed material evidence before the court. Dreiling v. Peugot Motors of America, Inc., 850 F.2d 1373, 1377 (10th Cir. 1988). Further, the court must consider all the evidence in the light most favorable to the nonmoving party. Id.

*Background*

The Blazer's lineage can be traced as follows: on May 13, 1995, Gallup Auto Sales purchased the Blazer from a Dennis Brown. The title certificate indicates that the mileage was 67,262 miles, and there is a check in the box on the certificate which states that the mileage exceeds the odometer mechanical limits. Ex. C. A few weeks later, Gallup Auto sales sold the car to Eleanor Arthur. On both the application for vehicle title and registration and the bill of sale, Gallup Auto certified that the mileage was 67,262, *and* checked the box which stated the

mileage exceeded the odometer mechanical limits.  Ex.C.[2]  On November 30, 1995, Arthur sold the Blazer back to Gallup Auto Sales.  The certificate states that the actual vehicle mileage is in excess of mechanical limits and *also* included a warning that the odometer did not display the actual mileage.

Several weeks later, on December 9, 1995, Gallup Auto sales sold the Blazer to Plaintiffs.  The Purchase Order given to the Lees reflects the mileage shown on the odometer (67,262), but contained no other odometer disclosures.  On January 9, 1996, Defendants had Plaintiffs sign a power of attorney form.  This form also does not contain any disclosures.  Pltff's Mem.Brf., Ex. F.[3]  A copy of an application for vehicle title and registration and a copy of the back of the title certificate (for reassignment of title) are also dated January 9, 1996.  These documents certify that the mileage on the vehicle was 67,262 and that this was not the actual mileage.  Pltffs' Mem.Brf., Ex. C.

The Lees contend that Defendants filled out the back of the title certificate form and signed their names for them, pursuant to the power of attorney.  However, in his deposition, Norvin Lee stated that he did execute his signature on a document on January 9, 1996.  See Lee Dep., 29:11-17.[4]  Defendants concede that odometer disclosure was not given on the day of sale

---

[2] Montana Mining was the lienholder in the transaction between Gallup Auto Sales and Arthur.

[3] A written power of attorney may be used when the title is in possession of a lienholder at the time the transferor transfers ownership of the vehicle.  However, the power of attorney form must contain the mileage disclosures which are required under the Federal Odometer Act and its regulations.  49 U.S.C. § 32705(b)(2)(A); 49 C.F.R. § 580.13.

[4] As noted above, both the application for title and the back of the title certificate contained disclosure statements that the mileage amount was not the actual mileage, but did not state that the number was in excess of mechanical limits.

but on January 9, 1996 because Plaintiffs did not have sufficient funds until that day to pay for the tax. title and license transfers until that day.  Egeland Aff., ¶¶ 6, 7.

*Federal Odometer Act Claim*

The Odometer Act prohibits the transferor of a motor vehicle from making "a false statement" to the transferee in transferring the vehicle.  The Act requires written disclosure of the "cumulative mileage registered on the odometer" and disclosure "that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled."  49 U.S.C. § 32705(a).  A vehicle will not be licensed in the state unless the mileage disclosure information required under the Act is included on the title application.  § 32705(b)(1).

Regulations under this statutory provision prescribe that the title, *at the time it is issued to the transferee*, must contain the mileage disclosure.[5]  49 C.F.R. § 580.5(a).  The disclosure must include the following *if known by the transferor*:

> (1) . . . [that] the odometer reading reflects the actual mileage, or;
> (2) . . . a statement to the effect "that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit;" or
> (3) . . . a statement "that the odometer reading does not reflect the actual mileage, and should not be relied upon.  This statement shall also include a warning notice to alert the transferee that a discrepancy exists between the odometer reading and the actual mileage."

49 C.F.R. § 580.5(e)(2), (3).

To prevail on an Odometer Act claim, Plaintiffs must show that Defendants violated the Act "with intent to defraud."  49 U.S.C. § 32610(a); Ryan v. Edwards, 592 F.2d 756, 761 (4th Cir. 1979), cited in Tusa v. Omaha Auto Auction, Inc., 712 F.2d 1248, 1253 (8th Cir. 1983).

---

[5] In this case, Gallup Auto Sales initially had title until it assigned the contract to Montana Mining on the same day of purchase.  See Compl., Ex. 3 (back of title certificate).

This level of scienter does not require actual knowledge, but may be inferred where the transferor displays "a reckless disregard for the truth" or because he "clos[ed] his eyes to the truth." Suiter v. Mitchell Coach Sales, Inc., 151 F.3d 1275, 1282 (10th Cir. 1998) (citing Haynes v. Manning, 917 F.2d 450, 453 (10th Cir. 1990) (*per curiam)*); see Nieto v. Pence, 578 F.2d 640, 642 (5th Cir. 1978); cmp. Tusa, 712 F.2d at 1253 ("[b]oth federal appeals courts which have considered the issue of intent to defraud and most district courts which have considered the issue have been willing to infer an intent to defraud where the seller exhibited gross negligence or a reckless disregard for the truth in preparing odometer disclosure statements").

Plaintiffs claim that Defendants' conduct constitutes fraud under the Odometer Act because the only mileage information provided to them at the time of the sale, and on which they relied in purchasing the Blazer, was in the Purchase Order which included only the number of miles then showing on the broken odometer. They also contend that Defendants violated the law by the inconsistency between the information they gave the Lees in the Purchase Order at the time of sale and the disclosures they made later to the Motor Vehicle Department on the title application, even though they knew that the mileage on the Blazer was at least 167,262 or even higher since the odometer was not working.

The Tenth Circuit has not yet had occasion to consider the issue of disclosure requirements of the Odometer Act as it relates to the transferor of a vehicle on which the odometer has rolled over. However, on appeal of this case on a separate issue, the Tenth Circuit was inclined to follow the Fourth and Eighth Circuits in recognizing a cause of action from the facts alleged. See Lee v. Gallup Auto Sales, Inc., 135 F.3d 1359 (10th Cir. 1998) (citing Ryan v. Edwards, 592 F.2d 756, 760-61 (4th Cir. 1979) and Hughes v. Box, 814 F.2d 498, 502 (8th Cir.

5

1987)).[6]

The Ryan case is similar to the Lees' situation. In Ryan, Plaintiff never saw the title certificate until several days after the sale. 592 F.2d at 759 n.3. While the title did contain cumulative mileage which indicated the odometer had turned over (110,020), the dealer gave Ryan an odometer disclosure statement at the time of sale on which he listed only the number then appearing on the odometer (13,175) and checked a box to indicate that the true mileage was unknown. The Fourth Circuit held that the federal statute requires the dealer to state the mileage as 100,000 *plus* the number that actually appears on the odometer where he knows that the odometer has turned over, and that listing the mileage as "unknown" was not appropriate in such a situation. 592 F.2d at 760-61 ("[a] transferor may certify the mileage as "unknown" only when he believes that, for some other reason [other than the odometer having turned over], the odometer reading is inaccurate").

Other courts which have addressed the issue have come to similar conclusions. See Francesconi v. Kardon Chevrolet, Inc., 703 F.Supp. 1154, 1159 (D.N.J. 1988) ("where transferor knows that the odometer has turned over and no longer accurately represents the mileage on the vehicle, ... the figure which must be disclosed on the odometer statement is 100,000 miles plus that amount actually registered on the odometer"); accord, Nieto v. Pence, 578 F.2d 640 (5th Cir. 1978); see also Suits v. Little Motor Co., 642 F.2d 883, 886 (5th Cir. 1981); McGinty v.

---

[6] The case was appealed after Defendants' motion to dismiss was granted on the issue of whether the Secretary of the National Highway Traffic Safety Administration had authority to promulgate a regulation exempting vehicles ten years old or older from the disclosure requirements. The Tenth Circuit ruled that the regulation was invalid based on lack of authority to create the exemptions, and that Plaintiffs stated facts to support a cause of action, but made no further ruling on the merits of the case. See Lee v. Gallup, 135 F.3d 1359.

Beranger Volkswagen, Inc. et al., 633 F.2d 226, 230 n.4 (1st Cir. 1980) (citing district courts following Ryan's holding); 49 C.F.R. § 580.5(e)(2); Hughes v. Box, 814 F.2d 498, 502 (8th Cir. 1987) (dealer violated state odometer statute where odometer mileage statement given to buyer at time of sale incorrectly stated vehicle's mileage as roughly 32,000 and title sent to buyer several days later listed correct mileage as 110,020).

In the present case, Defendants do not dispute that the only written odometer information was provided in the Purchase Order. Instead, they seek vindication, or at least avoidance of summary judgment, through what they view as a literal compliance with the statute. They claim that after buying back the car from Ms. Arthur, it "became apparent" that the odometer was broken and that therefore their statements in the January 9, 1996 disclosure that 67,262 was not actual mileage were not false. See Egeland Aff., ¶ 4. However, literal compliance with the statute is insufficient to avoid liability under the Federal Odometer Act when a transferor knows that a vehicle's odometer has turned over and no longer accurately represents the mileage on the vehicle. Ryan, 592 F.2d at 760-61 (noting that the Odometer Act was remedial in nature and should be broadly construed), cited in Jones v. Hanley Dawson Cadillac Co., 848 F.2d 803, 808 (7th Cir. 1988).

Defendants' view of the statute's requirements is misleading. Odometer disclosure statements are meant to protect consumers so that they know "how many miles the vehicle has traveled, as a guide to its safety, reliability and value." Baker v. Cawthon Motor Co., 629 F.2d 410, 412 (5th Cir. 1980); Ryan at 759, 761 ("[w]hen a transferor who knows that an odometer has "turned over" merely records the numbers appearing on the odometer and certifies that the true mileage is unknown, the consumer is not simply deprived of accurate mileage information; he

7

is actually misled by the form itself"). Moreover, a literal view of the federal statute requiring the transferor to state that the actual mileage is unknown when he knows that the true mileage exceeds the figures appearing on the odometer by 100,000, has been found to be "absurd." Ryan 592 F.2d at 761 n.7, cited in Suits, 642 F.2d at 886 n.9.

I find as a matter of law that where the transferor knows the vehicle's odometer has turned over after registering 99,000 miles, the Odometer Act requires that the cumulative mileage number must reflect 100,000 miles in addition to the miles appearing on the odometer. Ryan at 760-61. Thus, if Defendants knew the Blazer's odometer had rolled over, that number should have been included at least on the title certificate. In his affidavit, Egeland states that in preparing the disclosure for Dennis Brown to sign and certifying that the mileage exceeded mechanical limits, Gallup Auto Sales simply "assumed" the odometer had turned over. Egeland, ¶ 2. I find that no reasonable juror would infer from this statement anything other than a subjective knowledge that the Blazer's mileage was at that time 100,000 plus 67,000 miles.[7] See Ryan, 592 F.2d at 761 n.5 ("absolute certitude" not required for knowledge of odometer "turn over") (citing Nieto v. Pence, 578 F.2d 640 (5th Cir. 1978)).

Defendants' statements of fact fail to create disputes of material fact sufficient to withstand summary judgment. Several of the statements actually strengthen Plaintiffs' position that Defendants violated the federal statute. Defendants admit that Gallup Auto Sales, and not Mr. Brown, filled out the disclosure information on the title, which indicated that the mileage had exceeded the mechanical limit of the odometer (i.e., that it had rolled over). Egeland Aff., ¶ 2.

---

[7] At the time the Blazer was bought back from Mr. Brown, only 67,000 appeared on the odometer. Egeland Aff., ¶ 2.

8

They also concede that they filled out the disclosure the same way for Eleanor Arthur. It is undisputed that when Gallup Auto Sales sold the car to the Lees, Defendant disclosed that there was a mileage discrepancy, but not that the mileage had exceeded the odometer limits. Egeland Aff., ¶ 4. It is also undisputed that the only mileage statement given to the Lees on the day of sale (the Purchase Order) and which was not ordinarily provided as a form of mileage disclosure, listed the mileage as 67,262.[8] Defendants concede that they did not give Plaintiffs the odometer disclosure until January 9, 1996. Even their claim that Norvin Lee appeared to know that the Blazer had more than 100,000 at the time of purchase and was not concerned supports the fact that subjective knowledge of that fact was shared by Defendants.[9]

Nor would any reasonable juror find Defendants' conduct to be less than a reckless disregard for the truth, which is the minimum standard for civil liability under the statute. See Suiter, 151 F.3d at 1282 (intent to defraud exists if transferor had reason to know the mileage on the vehicle was more than was reflected by the odometer or certification of the previous owner and nevertheless failed to take reasonable steps to determine the actual mileage); see also Hanley Dawson, 848 F.2d at 806 (private cause of action for individuals aggrieved by a violation of the Federal Odometer Act where there is intent to defraud); Tusa, 712 F.2d at 1250 (statute imposing

---

[8] Parties have stipulated that the purchase orders customarily given to Gallup Auto Sales' customers do not provide any information regarding whether the mileage is actual miles, not the actual miles, or in excess of the mechanical limits of the odometer. Pltffs' Mem.Brf., Ex. D. Parties have also stipulated that on the day of the sale, the odometer on the Blazer was not working.

[9] In his deposition, Norvin Lee admitted that it was obvious that the Blazer had over 100,000 miles when he bought it. Resp., Lee Depo. at 30:8-15. However, Plaintiffs' knowledge or reliance on information given by the dealer is not relevant to the discrete issue of whether Defendants violated the Federal Odometer Act. Liability is imposed upon any person violating the law and does not require proof of reliance on the false statement. Ryan, 592 F.2d at 761.

9

requirements does not impose remedy, which is provided in separate provision and requires scienter element).

The above undisputed facts establish the existence of subjective knowledge on the part of Defendants. Suiter, 151 F.3d at 1282 (transferor "must have some subjective knowledge that the odometer mileage is inaccurate or must fail to explore mileage verification methods which the transferor subjectively knows to explore before liability may be imposed under the Odometer Act"). On two occasions before selling the Blazer to Plaintiffs, Defendants certified in disclosures that the vehicle's odometer had turned over, yet did not provide this information to the Lees in any written odometer disclosures, either on the day of sale or at the time the title transfer was made.

Defendants further argue that they cannot be liable under the statute because Gallup Auto Sales is not a "transferor" as defined under the statute.[10] This argument has no merit. The involvement of Gallup Auto Sales and Montana in the Blazer's chain of title, if only to accomplish a transfer, is insufficient to absolve them of liability under the Odometer Act. The signing of their names on the title certificates is sufficient to bring them within the meaning of the term in the statute. See Tusa, 712 F.2d at 1251 (holding that car dealer was "transferor" under state law interpretation of the term as well as for purposes of the federal statute where they voluntarily put their names on title and there was no showing of mistake of fact, coercion or fraud). However, Defendant Jerry Egeland would not be liable as an individual under the Act if he never had any

---

[10] "Transferor" means "any person who transfers his ownership of a motor vehicle by sale, gift, or any means other than by the creation of a security interest, and any person who, as agent, signs an odometer disclosure statement for the transferor." 49 C.F.R. § 580.3.

personal ownership in the Blazer. See Ryan, 592 F.2d at 762 (corporate dealership which acted as sole owner of vehicle was considered a "transferor" under the Act, but individual dealer who made entries found to have violated the statute was not liable).

Because I find that no issues of disputed fact exist with regard to Plaintiffs' claim under the Federal Odometer Act, summary judgment is granted to Plaintiffs.

*New Mexico Unfair Trade Practices Act*

Under the state Unfair Trade Practices Act ("UPA" or "Act"), "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." N.M.S.A. 1978 § 57-12-3.[11] Plaintiffs contend that Defendants made a false statement on the Purchase Order by stating that the mileage on the Blazer was 67,262 and in doing so violated the Act, specifically § 57-12-2(D)(14) which lists as an unlawful practice the failure to state a material fact if doing so deceives or tends to deceive.

The facts which support summary judgment on the federal statute claim do not themselves establish Defendants' liability under the UPA for summary judgment purposes. Plaintiffs must prove several elements before they can prevail in this claim: (1) Defendants made an oral or written statement that was false or misleading; (2) the false or misleading statement was knowingly made in connection with the collection of a debt; (3) the representation occurred in the regular course of the representor's trade or commerce; and (4) the representation "may, tends to, or does, deceive or mislead any person."

---

[11] "Unfair or deceptive trade practice" means "any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services [or] in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." N.M.S.A. 1978 § 57-12-2(D).

The second and fourth elements are not established as a matter of law by the undisputed facts in this case. Although the undisputed facts allow the inference of Defendants' subjective knowledge that the Blazer's odometer rolled over, they do not necessarily mean that Defendants knew (either by actual knowledge or in the exercise of reasonable diligence where they *should* have been aware) that the mileage statement on the Purchase Order was false or misleading. See Russey v. Rankin, 911 F.Supp. 1449, 1460 (D.N.M. 1995) (defining "knowingly made" requirement). Nor do the facts mandate a finding that the representation on the Purchase Order tended to, or did, deceive any person. By stipulation of the parties, the purpose of the Purchase Order was not intended to make a representation about mileage. On the face of that document is a warning, albeit in the fine print, to that effect. Resp., Ex. B. Also, Norvin Lee's statement in his deposition aligns with Defendants' factual contention that he was aware that the Blazer had at least 100,000 miles on it but was not concerned. Lee Depo. at 29:1-13; see Page & Wirtz Construction Co. v. Soloman, 110 N.M. 206, 210 (1990); N.M.S.A. § 57-12-10(A) (it is difficult to conceive of a false or misleading statement resulting in damages when the statement is not believed or relied on).

Because the facts which concern Defendants' intent as defined under the UPA, and the effect the Defendants' representations had on the Lees are in dispute, summary judgment on this issue is denied.

**WHEREFORE**,

**IT IS ORDERED THAT** Plaintiffs' Motion for Partial Summary Judgment **[docket # 44-1]** is hereby GRANTED as to Plaintiffs' claim under the Federal Odometer Act; and DENIED as to Plaintiffs' claim under the New Mexico Unfair Trade Practices Act.

_____
UNITED STATES MAGISTRATE JUDGE

13