# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NORVIN LEE and
BERNITA GARCIA,

      Plaintiffs,

v.                                                                            Civil No. 96-1525 WWD/LCS

GALLUP AUTO SALES, INC. d/b/a
FRIENDLY MOTORS; MONTANA MINING,
INC.; and JERRY EGELAND,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for New Trial and for Judgment Notwithstanding the Verdict, filed 3/23/99 **[docket #122]**. No timely response has been filed to the motion. Following a jury trial on January 26 -27, 1999, the jury returned the following verdict for Plaintiffs and against Defendants:[1] $6,400.00 for Plaintiff's actual damages for Defendants' violation of the Federal Odometer Act; $100,000.00 for Plaintiffs' damages from Defendants' misrepresentation as to the condition of the vehicle sold Plaintiffs by Defendants; $100,000.00 for Plaintiffs' damages against Defendant Montana Mining Inc. in connection with an improper collection letter sent to Plaintiffs; $200,000.00 as punitive damages related to Defendants' misrepresentation of the condition of the vehicle at the time of its sale to Plaintiffs;

---

[1] Jerry Egeland, President, Treasurer, director and shareholder of Gallup Auto Sales, Inc. and Montana Mining Finance, Inc., was initially a party in the action but was dismissed during the trial.

and $250,000.00 against Defendant Montana Mining as punitive damages related to the illegal collection letter aforementioned.

Defendants contend that the damages awards are the result of passion and prejudice on the part of the jury, and that they are excessive. Defendants also contend that having a new trial is the only proper way to deal with the excessive verdict. Defendants do not seek a remittitur; in fact, they argue that granting a remittitur would be improper. In addition, they contend that the verdicts on the claim of prima facie tort should be set aside.

## BACKGROUND OF CASE

Defendants, a corporation selling used cars and a commonly owned corporation financing those vehicles, sold and financed their vehicle sales in Farmington, New Mexico, an area where a large percentage of their customers were unsophisticated Navajo Indians. In Plaintiffs' case, and apparently as a matter of practice, a substantial down payment would be required and then installment payments on the balance would be set at a level where the buyer, in this case the Plaintiffs, would have difficulty in making the payments.[2] Repossessions occurred frequently, and then the vehicles would be sold again and the process would be repeated. Under these circumstances, minimal consideration was given to whether a person had good credit or was able to pay the installment contract being used in connection with the purchase. Additionally, in Plaintiffs' case, there were misrepresentations as to the condition of the vehicle purchased, and the odometer did not register the true mileage on the vehicle. Also, Defendants used proscribed

---

[2] Plaintiffs were sold the vehicle at 26 percent interest with a demand for several balloon payments of $200.00 every two weeks. Tr. at 43, 183. Mr. Lee's monthly income, when he was working, was $1,100.00. Tr. at 169, 186.

2

collection methods when Plaintiffs fell behind in their installment payments.  Defendants' conduct was such as to allow the jury to consider the imposition of punitive damages against Defendants.[3]

**DISCUSSION**

The business practices engaged in by Defendants were deeply disturbing to the jury and to the Court as well.  With a small inventory of old cars Defendants established an effective apparatus for systematically cheating and exploiting a group consisting primarily of Navajo Indians, a population which frequently lacks sophistication in many aspects of the present day dominant culture in the United States.  Jerry Egeland, the major shareholder of both corporations, offers little in his testimony to address the Plaintiffs' evidence which showed the dark side of the business which was being conducted by the two corporations.

Notwithstanding the serious nature of the misconduct involved in this lawsuit, I am forced to conclude that some of the awards are excessive and that they should be reduced.  Such a remittitur would allow the Plaintiffs to consider realistically whether they wanted to have a new trial limited to the issue of damages in light of all the circumstances including the bankruptcy proceedings recently initialed by the defendant corporations.

*Legal Standards*

A new trial is appropriate when the district court determines that the jury verdict was the result of passion or prejudice.  Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 703 F.2d 1152, 1168 (10th Cir. 1981), cert. denied, 464 U.S. 824 (1983).  A blatantly excessive verdict can suggest such passion or prejudice on the part of the jury.  Id.  However, where the award is clearly

---

[3] On the special verdict, the jury found that the Defendants acted willfully concerning the statements made about the Blazer, and that Montana Mining had acted willfully in its actions regarding the collection notice.

3

excessive but the verdict itself is untainted by prejudice, another remedy is available. The court may order a remittitur of the excessive verdict and alternatively direct a new trial if plaintiff refuses to accept the remittitur. Malandris, at 1168; Holmes v. Wack, 464 F.2d 86, 89 (10th Cir. 1972). The court may not impose a remittitur merely because it, or another fact finder, would have awarded a smaller amount for the injuries proved at trial. Snowden v. Matthews, 160 F.2d 130, 131 (10th Cir. 1947). Rather, remittitur is appropriate only if "the award is not supported by the evidence, or [if] it is so excessive as to shock the conscience and raise an irresistible inference that it was the result of passion, prejudice, corruption, or other improper cause." Id.; see Manning et al v. Altec, Inc., et al, 488 F.2d 127, 130 (7th Cir. 1973) (citing Dimick v. Schiedt, 293 U.S. 474 (1930) (trial court which deems a jury's award of damages excessive may order the plaintiff to remit a portion of the verdict or suffer a new trial)).

The use of remittitur is well accepted in the federal system as a means to avoid the delay and expense of a new trial and to further the speedy end to litigation. See Wright & Miller, Federal Practice & Procedure, § 2815 (1973); McKinnon v. City of Berwyn, 750 F.2d 1383, 1391-92 (7th Cir. 1984). I find that use of remittitur is justified here. Except for Plaintiffs' claim of prima facie tort, which I discuss below, it is clear that the overwhelming evidence of Defendants' shady dealings with naive car buyers leaves the verdict on the liability issues uncompromised and uncontaminated by emotional variables which have resulted in unfounded excessiveness of the verdict on damages.

I also note that this Court can properly direct remittitur sua sponte as an alternative to a new trial. As remittitur is simply a court's response to a motion for a new trial, Defendants' timely motion permits the Court to consider the alternative even after more than ten days have

4

lapsed after the judgment. See Bender v. City of New York, 78 F.3d 787, 795 (2d Cir. 1996)(proper for court to direct remittitur where defendant did not formally move for remittitur and where remittitur was based on same grounds asserted by defendant in support of new trial, i.e., that the jury verdict was excessive); see also Fed.R.Civ.P. 59(d).

In making determinations on the amounts of remittitur, I have relied on a careful review of the trial evidence, a sensibility of conscience, and a method of calculation which is considered to be the least intrusive of a party's Seventh Amendment right to jury. See Wright & Miller, § 2815; accord, Carter v. District of Columbia et al, 795 F.2d 116, 135 (D.C.Ct. 1986) (citing W&M, § 2815 (1973) (appropriate to set remittitur so as to permit recovery of the highest amount the jury tolerably could have awarded).

***Damages in Connection with the Violation of the Federal Odometer Act.***

The Federal Odometer Act, 49 U.S.C. §§ 32701-32711 ("Federal Odometer Act"), permits recovery of three times the amount of actual damages sustained or $1,500, whichever is greater. Under jury instruction 5A-3, the "actual damages" which Plaintiffs could recover for the Odometer violation consisted of "(1) the difference between the price the plaintiffs paid for the vehicle and the fair market value of the vehicle, with its actual mileage, at the date of the sale to the plaintiffs, and (2) any other damages the plaintiffs may have suffered as a result of the purchase, such as loss of use resulting from the violation of the federal Odometer Act."

The Chevrolet Blazer's purchase price was $3,999.00,[4] and, according to their expert, the fair market value of the Blazer was at least $1,200.00 at the time of the sale. Tr. at 97; see, e.g.,

---

[4] The total amount due on the Blazer, including interest and balloon payments, came to $4,800.00. Tr. at 19-20.

5

Occidental Life Ins. Co. of No. Carolina v. Pay Ryan & Assoc., Inc., 496 F.2d 1255, 1264 (4th Cir. 1974) (district court did not abuse discretion in granting new trial where verdict was in excess of plaintiffs' own experts); but see Haluschak v. Dodge City of Wauwatosa, Inc., et al., 909 F.2d 254, 255 (7th Cir. 1990) (first remittitur not abuse of discretion where jury assumed that current value of car was negligible, but verdict was reinstated following second remittitur based on overestimated value of car which was not considered to be "monstrously excessive"). No other damages were shown to be related to the incorrect odometer. Mr. Lee testified that he knew the mileage on the Blazer exceeded 100,000 miles and was not concerned. Tr. at 50-51. Accordingly, the maximum damages attributable to the odometer problem would be $2,799.00; i.e., $3,999.00 minus $1,200.00. However, this amount is somewhat theoretical, since Plaintiffs paid out only $1,800.00 of the amount due on their installment contract. Tr. at 188.

Thus, actual damages proven in connection with the violation of the federal Odometer Act would be no more than $600.00 ($1,800.00 minus the fair market value of $1,200.00). Accordingly, a remittitur in the amount of $5,800.00 ($6,400.00 minus $600.00) will be directed, bringing the total amount of trebled damages for violation of the Odometer Act to $1,800.00.

*Damages in Connection with Misrepresentations*

The jury found that Defendants' misrepresentation of the Blazer's condition violated the New Mexico Unfair Practices Act, and that Plaintiffs had prevailed on their other state claims of fraud, negligent misrepresentation and prima facie tort. The New Mexico Unfair Practices Act is violated when there is "any false or misleading oral or written statement. . . knowingly made in connection with the sale of goods or in the collection of debts [ ] by any person in the regular course of his trade or commerce. . . which may, tends to or does deceive or mislead any person."

A person is found to "knowingly" make a false or misleading statement when a party was actually aware that the statement was false or misleading when made, or in the "exercise of reasonable diligence should have been aware that the statement was false or misleading." N.M.Stat.Ann.1978, §§ 57-12-2(D); 57-12-2-2(E)(1). The Act allows private remedies for loss of money or property in the form of recovery for loss of money or property §57-12-10.

The trial evidence does not support the jury awards in this category for either compensatory or punitive damages. Plaintiffs purchased the Blazer in December 1995. They first noticed that the Blazer started to lose power going uphill sometime in April, a couple of months after they had stopped paying for the vehicle. Tr. at 22, 28. Mr. Lee did not inquire into making other arrangements for payment, even after receiving the collection notice in mid-May. Tr. at 60. By the end of April, the vehicle had overheated and broken down.[5]

After the Blazer was repossessed in June 1996, Plaintiffs were forced to ask relatives for transportation. However, Plaintiffs found themselves without a car because they stopped making payments when Mr. Lee lost his job, not because of any misrepresentations that were made by Defendants. In fact, Mr. Lee stated at trial that he planned to have his cousin overhaul the engine and make the necessary repairs which amounted to about $500.00, which he would pay after he found another job. Tr. at 27. Despite all of the problems they had had, Plaintiffs testified that they still wanted to find a way to keep the car even after it was repossessed. Tr. at 63-64, 89.

---

[5] Mr. Lee initially testified that he discovered that the 4-wheel drive feature was broken only 3 days after the purchase of the Blazer. Tr. at 21, 24. He later conceded that the answer he gave at his deposition, i.e., that he discovered the problem after he had had the vehicle a month, was the correct answer. Tr. 47-48.

The compensatory damages awarded in connection with misrepresentations clearly outstrip the proof presented at trial even when the evidence favoring such an award is viewed by the Court in the most generous light conscience permits. Accordingly, a remittitur in the amount of $70,000.00 will be directed, leaving compensatory damages at $30,000.00. The $200,000.00 in punitive damages awarded in connection with the misrepresentations as to the condition of the vehicle is clearly excessive. A remittitur in the amount of $125,000.00 will be directed, leaving punitive damages in this category at $75,000.00.

***Damages in Connection with the "Collection Letter."***

Following jury instruction 5A-7, the jury found that Defendant Montana Mining committed "unconscionable trade practices" in connection with its debt collection practices and that Plaintiffs were entitled to an award of $100,000.00 in compensatory damages. Both Mr. Lee and his wife testified that they felt afraid, particularly since they lived in a remote area. Tr. at 32, 75. However, upon receiving the collection notice which they stated they perceived as a threatening letter, they took it to their attorney whom they had already retained, but did not notify the local police. Further, Mr. Lee admitted that the two men who came to repossess the Blazer made no threats at all and actually were decent about the incident. Tr. at 62, 63.

The $100,000.00 in compensatory damages awarded in connection with the improper collection letter also go outside the bounds which are acceptable. However, because the testimony supports a finding that Defendant's conduct was threatening to the Plaintiffs, I am inclined to rely to a greater extent on the jury acting as the enlightened conscience of the community in setting the damage award. Nevertheless, to put the award within what I find to be

8

the outer bound of acceptability, a remittitur in the amount of $30,000.00 will be directed, leaving the compensatory damages at $70,000.00.

The $250,000.00 in punitive damages awarded in connection with the improper collection letter is not shocking to the conscience of the Court. The threat of strong arm tactics in connection with debt collection smacks of the methods of criminal loan sharks, and it should not be tolerated. Accordingly, I will not direct any modification of this award.

A review of the trial transcript for evidence of "passion or prejudice" would not be complete without reference to Jerry Egeland's responses during his cross-examination by Plaintiff's counsel, to which several jury members were noted to appear either incredulous or irritated. His testimony can best be characterized as purposefully evasive or dense in his attempts, wherever possible, to hedge any suggestion of personal involvement not only in Plaintiff's purchase of the Blazer, but also with any goings-on at the two defendant businesses of which he was President, Treasurer, Director and sole shareholder.

In sum, regarding remittitur amounts: remittiturs will be directed in the following amounts: for violation of the Federal Odometer Act: $600.00, with total treble damages amounting to $1,800.00. For the $100,000.00 in damages awarded in connection with misrepresentations made about the vehicle, a remittitur in the amount of $70,000.00 will be directed, leaving compensatory damages at $30,000.00. For the $100,000.00 in compensatory damages awarded in connection with the improper collection letter, I am directing a remittitur in the amount of $30,000.00, leaving the compensatory damages at $70,000.00. For the $200,000.00 in punitive damages awarded in connection with the misrepresentations as to the condition of the vehicle, a remittitur in the amount of $125,000.00 will be directed, leaving

9

punitive damages at $75,000.00. Finally, there will be no remittitur for the $250,000.00 in punitive damages awarded in connection with the improper collection letter. Defendants will be granted a new trial unless Plaintiffs agree to accept the above modifications in the awards.

### *Rule 50 motion on Prima Facie Tort*

Defendants seek Judgment As a Matter of Law ("JNOV") dismissing Plaintiffs' claim for prima facie tort. A court may grant a motion under Fed.R.Civ.P. 50 "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997). The Court can not weigh the evidence, pass on the credibility of witnesses, or substitute its conclusions for that of the jury. Id.; Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). Each of the two arguments offered by Defendants to support their motion for a JNOV is sufficient on its own to grant their request.

Prima facie tort occurs "when a lawful act is conducted with an intent to injure and without sufficient economic or societal justification, resulting in injury." Lexington Ins.Co. v. Rummel, 123 N.M. 774 (1997), cited in Silverman v. Progressive Broadcasting, Inc., 125 N.M. 500, 510 (Ct.App. 1998). To present a claim for prima facie tort, the jury would had to have found Defendants' conduct to be lawful. Because the Plaintiff's allegations are based on *unlawful* acts of the Defendants, and the jury found that Defendants' acts were *unlawful*, the first element of prima facie tort is not met. Silverman, 125 N.M. at 510 (affirming trial court's dismissal of prima facie tort claim where Title VII violation would not constitute a lawful act necessary for a prima facia tort).

Further, prima facie tort is not a "catch-all" tort. It should be submitted to the jury only when there is no other plausible cause of action. See <u>Schmitz v. Smentowski</u>, 109 N.M. 386, 396 (1990) (prima facie tort is intended "to provide remedy for intentionally committed acts that do not fit within the contours of accepted torts[.]") (cited in <u>Schuler v. The McGraw-Hill Companies, Inc</u>., 989 F.Supp. 1377, 1391 (D.N.M. 1997)). In this case, Plaintiffs presented their case to the jury under claims of negligent misrepresentation, fraud and unfair trade practices. The submission of a claim under the theory of prima facie tort was incorrect as a matter of law, and therefore the claim will be dismissed.

Defendant argues that if prima facie tort is dismissed, a new trial is required because there is no way of knowing on which claims(s) the jury based the damage awards in the verdict. However, given the number of other claims on which the jury based its award, and because it was provided a cautionary instruction regarding double recovery for multiple claims, I do not find that a new trial is required on this basis.[6]

**WHEREFORE,**

**IT IS ORDERED** that Plaintiffs' claim for prima facie tort is dismissed from the above-captioned cause [**docket #122**];

**IT IS FURTHER ORDERED** that Defendant's Motion for New Trial and for Judgment Notwithstanding the Verdict **[docket #122]** is GRANTED IN PART in that this Court vacates the judgment in the above-captioned case unless Plaintiffs file within ten (10) days after entry of

---

[6] Jury instruction 8E stated in part: ". . . For example, if the Plaintiffs prevail on all claims and establish a dollar amount for the injuries, you must not award the Plaintiffs any additional compensatory damages on each claim. The Plaintiffs are only entitled to be made whole once, and may not recover more than it has lost. . . ."

11

this order a remittitur accepting judgment against Defendants in the amounts as set out above, exclusive of fees and costs.

**IT IS FINALLY ORDERED** that the Judgment entered March 10, 1999 **[docket #120]** is hereby VACATED.[7]

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] A judgment will be deferred until the Court is apprised whether Plaintiffs accept the remittitur. If so, the new judgment form will incorporate the Court's additional awards under the Unfair Practices Act of $50,000.00 over the compensatory damages for Plaintiffs' claims against Defendants on the misrepresentations, and $50,000.00 for Plaintiffs' claims against Defendant Montana Mining on the conduct related to the debt collection notice, with the proviso that payment toward satisfaction of either of the awards is payment toward both in order to prevent double recovery (see Order and Judgment entered 3/10/99, docket ## 199 & 120).